UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THERESA M. OWENS,

               Plaintiff,

     v.

ELI LILLY AND COMPANY,

               Defendant.

Civil Action No. 03-01798(EGS)

## AFFIDAVIT OF ERICKA L. HARPER

I, Ericka L. Harper, being first sworn on oath, say that the following is true and correct:

1.   I am an attorney at Foley Hoag LLP, counsel for Eli Lilly and Company ("Lilly") in this action. I am duly admitted to practice in the District of Massachusetts.

2.   Attached as Exhibit A is a true copy of the June 27, 2003 order granting Lilly's motion to transfer to the District of Massachusetts in *Thompson v. Eli Lilly and Company*, Civ. Action No. 03-122 (D.D.C.) (Walton, J.).

3.   Attached as Exhibit B is a true copy of the June 4, 2003 order granting Lilly's motion to transfer to the District of North Carolina in *McClamrock v. Eli Lilly*, Civ. Action No. 02-2383 (D.D.C.) (Walton, J.).

4.   Attached as Exhibit C is a true copy of Plaintiff Teresa M. Owens' Answers to Defendant Eli Lilly and Company's First Set of Interrogatories (dated October 23, 2003).

5.   Attached as Exhibit D is a true copy of a June 13, 2003 letter from Merle Berger, M.D. to Aaron M. Levine, Esq..

6.   Attached as Exhibit E is a true copy of "DES cases filed by Aaron M. Levine, Esq.

Against Eli Lilly and Company in the District of Columbia, March 2000-November 2003."

_____
Ericka L. Harper

Dated:  December 12, 2003

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NANCY THOMPSON and<br>MARK A. THOMPSON,<br><br>   Plaintiffs,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 03-122 (RBW)**<br>)<br>)<br>)<br>)<br>) |

**ORDER**

   The plaintiffs, Nancy and Mark Thompson, have brought this product liability action against the defendant, Eli Lilly and Company, for injuries that Mrs. Thompson alleges she suffered as a result of her mother's use of diethylstilbestrol ("DES") during her mother's pregnancy with Mrs. Thompson.  The defendant seeks to have this case transferred to the District of Massachusetts "[b]ecause it would be more convenient for the parties to litigate this action in the District of Massachusetts -- where the alleged exposure in utero to (DES) took place, where almost all of the fact witnesses reside -- and because there is absolutely no connection between the District of Columbia and plaintiffs' claims."  Motion of Defendant Eli Lilly and Company to Transfer Action, Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to Transfer ("Def.'s Mem.") at 2-3.  Upon consideration of the parties' submissions and for the reasons set forth below, the Court will transfer this case to the District of Massachusetts.

1

28 U.S.C. § 1404(a) (2000) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court is given broad discretion when considering whether to grant or deny a motion to transfer, which entails first determining whether the action could have been brought in the proposed transferee district and, if so, examining several private and public interest factors. While deference is typically given to a plaintiff's choice of forum and the moving party "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted[,]" Gemological Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001), courts recognize that less deference is given when the chosen forum is not the plaintiff's home forum,  Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). With these considerations in mind, the Court will first examine whether this case could have been brought in the District of Massachusetts.

**(A)      Could This Action Have Been Brought in the District of Massachusetts?**

Before a case may be transferred to another judicial district, a court must determine whether the transferee district is a proper venue and can exercise personal jurisdiction. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…" In this case, it is undisputed that this action could have been brought in Massachusetts. This is because the alleged events that gave rise to the plaintiffs' claims occurred there, as Mrs. Thompson's mother received and ingested the DES in Massachusetts. Def.'s Mem. at 1. And, pursuant to Massachusetts' long-arm statute, it is also undisputed that a federal court in Massachusetts would be able to exercise personal jurisdiction over the defendant,

2

as Eli Lilly acknowledges that it had sufficient contacts with Massachusetts through its sales of DES in that jurisdiction. Id. at 3. (citing Mass. Gen. Laws ch. 223A, § 3 (Massachusetts long-arm statute governing torts allegedly committed in Massachusetts)). Having concluded that this action could have been brought in Massachusetts, the Court will now evaluate whether the private and public interest factors favor the transfer of this action.

**(B)**    **Do the Interests of the Parties and the Public Favor of Transferring this Case to the District of Massachusetts?**

In considering a motion to transfer, a Court must examine several factors, such as: "[t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory processes to compel the attendance of unwilling witnesses; the amount of expense for the willing witnesses; the relative congestion of the calendars of potential transferor and transferee courts; and other practical aspects of expeditiously and conveniently conducting a trial." Boers, 133 F. Supp. 2d at 65 (D.D.C. 2001) (citation omitted).

Upon evaluating these factors, it is abundantly clear that this case should be transferred to the District of Massachusetts. Massachusetts is the situs where the DES was ingested and therefore the location where any injury resulting from its use occurred. Nearly all of the fact witnesses reside in Massachusetts, including the plaintiffs, Mrs. Thompson's mother, all of the physicians who have treated Mrs. Thompson for the injury she allegedly sustained, and Mrs. Thompson's primary care physicians. Def.'s Mem. at 1-2. Furthermore, the ability to access much of the physical proof with the least effort favors transfer to Massachusetts, as that is where Mrs. Thompson and her mother's

3

medical records are located.  And, the pharmacies that sold Mrs. Thompson's mother the DES are also located there.[1]

In addition, because the majority, if not all of the witnesses reside in Massachusetts, any concerns regarding the availability of compulsory process and the expense of securing the presence of the witnesses also favor transfer to Massachusetts. While the plaintiffs focus on the relative congestion of the two courts' calendars as grounds for the case not being transferred,[2] the Court notes that this case is at an early stage of the litigation[3] and this Court's calendar is actually quite congested.[4]

Other relevant factors also weigh in favor of transferring this case to Massachusetts.  Not only do the local interests in this matter strongly favor transferring

---

[1] Defendant notes that the three major issues in DES cases are: the questions of exposure, product identification, and the nature and extent of Mrs. Thompson's alleged injuries. Regarding exposure, defendant anticipates the need to obtain relevant medical records and to depose the physicians that are still alive who treated plaintiff's mother during her pregnancy. Def.'s Mem. at 5. As for product identification, defendant maintains it will need to depose the dispensing pharmacist or other pharmacy employees regarding the dispensing practices of the pharmacy or pharmacies in question. Id. Finally, regarding Mrs. Thompson's injuries, defendant contends that proof of the alleged injuries will come to the fact-finder in the form of medical records located in Massachusetts and from the testimony of Mrs. Thompson's and her mother's physicians. Three of the seven physicians identified by the plaintiffs who treated Mrs. Thomson are still living and believed to currently practice in Massachusetts. Id. at 6. In addition, most, if not all of the other witnesses and non-witness evidence are also located in Massachusetts.

[2] Plaintiffs' counsel seeks to make a comparison between the efficiency and speed of this Court and the District of Massachusetts in resolving DES cases. The basis offered for this comparison is two DES cases originally filed in this Court on October 7, 2002. Compare Christine Foti et ux v. Eli Lilly and Company, Civ.A. No. 02-1977, with Hillary Blank et ux v. Eli Lilly and Company, Civ.A. No. 02-1976. In the first case a motion to transfer the case to Massachusetts was granted on November 22, 2002, and according to the plaintiffs, no action has yet been taken by the Massachusetts district court. And, in an effort to make a comparison between the two jurisdictions, the plaintiffs assert that in the second case a settlement conference has been scheduled for August 5, 2003, before another member of this Court.

[3] This case is currently in the early stages of litigation as the close of discovery is not scheduled to occur until October 15, 2003.

[4] Neither party disputes that the assigned judicial settlement officer, Magistrate Judge Kay, has experience settling DES cases, which admittedly could contribute to the expeditious resolution of this action. However, the District of Massachusetts has been exposed to substantial DES litigation as well, see, e.g., Payton v. Abbott Labs., 100 F.R.D. 336 (D. Mass. 1983), and has had at least five DES cases transferred to it from this district in the last year and a half. Defendant's Reply in Support of its Motion to Transfer ("Def.'s Reply") at 4. Therefore, the plaintiffs have failed to demonstrate that calender congestion in the District of Massachusetts would unduly delay the resolution of this case or that this court is better equipped to ensure the timely processing of a DES case.

4

this case to Massachusetts, but it also appears that Massachusetts state law will govern the plaintiffs' claims.[5]  And a Massachusetts court is better equipped to apply Massachusetts law, as another member of this Court has commented, the interests of justice "[a]re best served by having a case decided by the federal court in the state whose laws govern the interests at stake." Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996).

While this Court finds it significant that Massachusetts has such strong connections to this case, equally significant is that the District of Columbia has no such connection to this matter.  The plaintiffs assert that there is a connection between the District of Columbia and their claims because this jurisdiction is where the original industry wide promotion of DES occurred and where defendant lobbied and applied for Food and Drug Administration  approval to sell and promote DES.  Plaintiffs' Opposition to Defendant's Motion to Transfer ("Pls' Opp'n") at 4.  Plaintiffs also argue that the defendant spent over $6,500,000 in 2001 on marketing and lobbying efforts in the District of Columbia and currently employs at least 58 lobbyists in this jurisdiction.  Id. at 5.  Plaintiffs further note that the defendant itself has selected the District of Columbia as its home forum in litigation against its insurers involving coverage of the DES claims that have been filed against it.  Id.  This Court is unconvinced that these contacts, which have no direct connection to this case, favor maintaining this case in the District of Columbia.

---

[5] If this case remained in the District of Columbia, Massachusetts substantive law would most likely govern this litigation.  To determine what law this Court would have to apply, it must use the District of Columbia's choice of law analysis.  See Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129 F.3d 143, 148 (D.D.C. 1997).  And this analysis would seemingly compel this court to apply Massachusetts law.

5

Finally, the Court notes that this case is clearly distinguishable from a recent DES case in which this Court denied transfer pursuant to 28 U.S.C. § 1404(a).  In <u>Ingram v. Eli Lilly & Co.</u>, No. Civ.A. 02-2023, 2003 U.S. Dist. LEXIS 1619, (D.D.C. January 28, 2003) (Walton, J.), the plaintiff's injuries arose in Seattle, Washington.  <u>Id.</u> at *5. However, the plaintiff's mother lived in Oklahoma; the prescribing obstetrician was located in California; plaintiff's expert witnesses resided in Texas, Arkansas, Pennsylvania and Alabama; and none of the expert witnesses that the defendant customarily used were located in the State of Washington State.  <u>Id.</u>  Thus, although the State of Washington was the location where the DES was prescribed and ingested, none of the vital witnesses remained in that jurisdiction.  <u>Id.</u>  In this case, there is no such concern over a lack of a substantial connection to one particular jurisdiction.  Therefore, the plaintiffs' reliance on <u>Ingram</u> is misplaced.

Accordingly, it is, hereby this 27th day of June, 2003,

**ORDERED** that the defendant's motion to transfer the case is **GRANTED**.  It is

**FURTHER ORDERED** that this case shall be transferred to the District of Massachusetts.

REGGIE B. WALTON
United States District Judge

6

EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BARRY McCLAMROCK,** | ) | |
| Plaintiff, | ) | |
| v. | ) | **Civil Action No. 02-2383 (RBW)** |
| **ELI LILLY AND COMPANY,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Currently before the Court is defendant Eli Lilly and Company's ("Lilly") motion to transfer, which asserts that plaintiff's claims should be transferred to the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a) (2000). For the reasons set forth below, the Court will grant the defendant's motion and transfer this action to the Middle District of North Carolina.

### I.    Background

This product liability action, which was brought in this Court pursuant to the Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332 (2000), was filed by plaintiff Barry McClamrock, a citizen of North Carolina, against defendant Lilly, an Indiana corporation. Plaintiff alleges that he has suffered severe injuries as a result of his ingestion of Zyprexa, a pharmaceutical drug manufactured by Lilly, which was prescribed for plaintiff's use by his treating physician in North Carolina.

Defendant has filed a motion to transfer this action to the Middle District of North

Carolina.  Defendant argues that all of the witnesses reside and documentary evidence pertinent to plaintiff's claims is located in North Carolina, or alternatively Indiana, where defendant maintains its principal place of business.  Defendant Eli Lilly and Company's Memorandum of Points and Authorities in Support of Its Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the Middle District of North Carolina ("Def.'s Mem.") at 1-2.  Plaintiff argues, in opposition, that his choice of forum should be accorded deference and that there are federal documents and witnesses located in the District of Columbia that warrant this action to remain in this district.  Plaintiff's Opposition to Defendant Eli Lilly and Company's Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the Middle District of North Carolina ("Pl.'s Opp'n") at 7.  Furthermore, plaintiff argues that his counsel resides in this district and therefore, if this action were transferred to North Carolina, he would be left without legal representation.  Id. at 6.

## II.    Discussion

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  As the moving party, defendant bears the burden of establishing that the transfer of this action to another federal district is proper.  Shenandoah Associates Ltd. Partnership v. Tirana, 182 F. Supp. 2d 14, 25 (D.D.C. 2001).  Although the plaintiff's choice of forum is given substantial deference, this deference is "greatly diminished when the activities have little, if any, connection with the chosen forum."  Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991) (citation omitted); Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124,128 (D.D.C. 2001) (citation omitted).

2

The first question the Court must decide in assessing whether this case should be transferred is whether this action could have been brought in North Carolina.  Pursuant to 28 U.S.C. § 1391(a) (2000), venue is proper in a "judicial district where any defendant resides . . . [or] in which a substantial part of the events or omissions giving rise to the claim occurred . . . [or] a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." (emphasis added).  Because most, if not all, of the "events or omissions giving rise to the claim occurred" in North Carolina, this action could have properly been brought in that jurisdiction.

Second, the Court must determine whether the private interests of the parties favors transfer of this action to North Carolina.  Although convenience of the parties, convenience of the witnesses, and the interests of justice are the three principle factors to consider in determining whether to transfer a case, courts have also considered "various other factors, including the private interests of the parties and the public interests of the court," as additional considerations "protected by the language of Section 1404(a)."  Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 16 (D.D.C. 1996) (citations omitted).  The private considerations that may be considered include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

3

Id. (citations and footnotes omitted).

As to the first factor of the these private interests factors, plaintiff appears to blindly assume that because he chose the District of Columbia to file this action, "[h]is choice of venue should not be disturbed." Pl.'s Opp'n at 4. However, as stated previously, plaintiff's choice of forum is not accorded substantial deference where "the plaintiff's[] choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or the subject matter.' . . . Moreover, the defendant's[] burden in a motion to transfer decreases when the plaintiff's[] choice of forum has no meaningful nexus to the controversy and the parties." Greater Yellowstone Coalition, 180 F. Supp. 2d at 128 (citations omitted).

Regarding the second private interest factor, the defendant's choice of forum, North Carolina, would appear to be the more appropriate forum for the litigation of this action, as most of the remaining private factors all favor the transfer of this matter to that jurisdiction. It is the location where plaintiff's claims arose (the third factor), where plaintiff resides and where the defendant desires to have this matter transferred (the fourth factor), and in conjunction with Indiana, is presumably where some of the evidence is located (the sixth factor). There being no contention that the witnesses will not be available in this district, the fifth factor is really of no significance. Thus, aside from plaintiff's choice of this forum, and the convenience of the witnesses, the remaining private interest factors the Court may consider favor the transfer of this action to North Carolina.

However, in an attempt to convince the Court that this action should remain in this district, plaintiff makes several arguments pertaining to the private interest factors,

4

which he argues supports maintaining this action in this district.  For example, plaintiff

argues that he may want to depose and call as witnesses individuals who are located in

the District of Columbia, such as employees of the Federal Drug Administration

("FDA").  While it may be more convenient for witnesses who work in this district to

have their depositions taken and their testimony presented here, an important factor in

determining whether to transfer an action is also the "availability of compulsory process

to compel the attendance of [witnesses] . . ." Chung v. Chrysler Corp., 903 F. Supp.

160, 164 (D.D.C. 1995).  While potential witnesses who work in this district will be

outside the compulsory reach of a North Carolina district court, plaintiff does not allege

that the non-party witnesses who work in this district will refuse to appear for

depositions and at the trial if this matter is transferred to North Carolina, or that their

testimony can not be secured by other means. Shapiro, Lifschitz & Schram, P.C. v.

R.E. Hazard, Jr., 24 F. Supp. 2d 66, 72-73 (D.D.C. 1998) (denying defendant's motion

to transfer where there was no allegation that non-party witnesses would refuse to

appear at trial or that the "third-parties' testimony could not be obtained by other

means, such as written or videotaped depositions.") (citation omitted).  More importantly

however, as defendant notes, the nucleus of plaintiff's claims is not that the FDA acted

improperly in approving Zyprexa for human consumption; the FDA has not been named

as a defendant and plaintiff does not allege in the complaint that the FDA was

somehow negligent or at fault for its approval of the drug.  Rather, the gravamen of

plaintiff's lawsuit is that Lilly was negligent in placing the drug on the market, and failed

to disclose to plaintiff and his treating physician the adverse consequences that could

result from the use of Zyprexa.  Thus, plaintiff has not demonstrated how FDA officials

5

will be vital, or even important, to the proof of his strict liability/failure to warn,

negligence, breach of express and implied warranties, and fraud claims against Lilly.

See Pyrocap Int'l Corp. v. Ford Motor Co., No. Civ.A. 02-346, 2003 WL 1623898, at *4

(D.D.C. Mar. 31, 2003) (granting defendant's motion to transfer action from District of

Columbia to the Eastern District of Michigan, despite plaintiff's argument that the

government agencies who tested the product at issue resided in the District of

Columbia, because "the gravamen of th[e] case involve[d] defendants' alleged

knowledge and conduct, with which agencies headquartered in the District [were] not

alleged to have any involvement whatsoever."). Cf. Chung, 903 F. Supp. at 164

(transferring action from District of Columbia to the Western District of New York where

the "two most important witnesses" resided in that jurisdiction).

Interestingly, although plaintiff indicates that he will need the testimony of FDA

employees, he nonetheless posits that

> there are no treating physicians that would be 'necessary'
> for trial in this case. . . . Warren Williams, M.D., was
> [p]laintiff's Zyprexa prescribing physician, but Lilly has
> failed to provide any reasons why Dr. William's testimony
> is imperative for trial. Further, any treating physicians'
> testimony that may be needed for trial could be
> videotaped.

Pl.'s Opp'n at 8. A very similar position was rejected by the court in McGinnis v. Eli Lilly

& Co., 181 F. Supp. 2d 684 (S.D. Tex. 2002). In McGinnis, the plaintiff brought claims

against the defendant for strict products liability, negligence, and breach of implied

warranty based upon plaintiff's wife's ingestion of a pharmaceutical drug manufactured

by the defendant (Prozac), which plaintiff alleged caused his wife's suicide. Id. at 686.

At the time of the suicide, plaintiff and his wife resided in North Carolina; in addition,

6

plaintiff's wife had received mental health counseling and had been prescribed Prozac

by doctors in North Carolina. Id. In granting the defendant's motion to transfer the

action to North Carolina from Texas, the state where the plaintiff resided, the McGinnis

court rejected the plaintiff's argument that the treating physicians would not be

necessary for trial of the case.

> Plaintiff further asserts that the other witnesses identified
> by Lilly, including the mental health professionals who
> treated decedent, are incidental to the adjudication of
> this case, and that testimony presented by deposition,
> in lieu of testimony at trial, would suffice for all of these
> witnesses. The Court disagrees. Although Dr. Kilbride
> and Thomas Hensley may have met with decedent for
> only brief periods of time, they still represent the only
> mental health professionals to have treated and
> diagnosed decedent's depression. Not only is Doctor
> Kilbride the only known physician to have prescribed
> Prozac to decedent, the very drug that [p]laintiff now
> claims caused his wife's death, but he is the only
> individual who can testify as to whether or not Lilly
> failed to warn and/or made material misrepresentations
> to him regarding Prozac's safety, as specially averred by
> [p]laintiff. In light of these compelling facts, it is bordering
> on the absurd for [p]laintiff to suggest that the testimony
> of either Dr. Kilbride or Thomas Hensley is somehow
> inconsequential to the resolution of this case.

Id. at 688.

Similarly, in this case plaintiff is being at best disingenuous to even suggest that he

will need the testimony of FDA employees but will not need the testimony of his North

Carolina prescribing and treating physicians in a case in which he is seeking to recover

damages for "past and future medical, hospital, incidental and service expenses . . .[,]"

Compl. at 22. How plaintiff realistically believes he will be able to prove these elements

of damages without the testimony of the health care professionals who have treated

7

him and who will presumably continue to do so in the future, if future treatment will in fact be required, is beyond this Court's comprehension. See, e.g., Hensley v. Danek Medical, Inc., 32 F. Supp. 2d 345, 350 (W.D.N.C. 1998) ("In North Carolina, a jury award cannot be sustained in the absence of expert medical testimony on the issue of causation. . . .") (citation omitted); District of Columbia v. Howell, 607 A.2d 501, 506-7 (D.C. 1992) (setting aside plaintiff's "damage award for future medical expenses . . . because the award [was] unsupported by evidence[]" and noting that plaintiff's medical experts failed to offer any testimony regarding plaintiffs future therapy costs).

Moreover, the complaint alleges that the physician who prescribed Zyprexa for plaintiff's use "relied on the representations made to him by the [defendant] . . . and would not have recommended for use or prescribed Zyprexa if he had known the true facts regarding the safety of Zyprexa." Compl. ¶ 17. Certainly the plaintiff must and the defendant will undoubtedly desire to question plaintiff's prescribing physician concerning these alleged misrepresentations as he is the only person who can state what misrepresentations he specifically relied on in prescribing Zyprexa to plaintiff. See Pyrocap Int'l Corp., 2003 WL 1623898, at *5 (rejecting plaintiff's opposition to transfer motion that was based on argument that key government official witnesses were present in the District of Columbia. The court held, "[g]iven that [the] testimony [of the governmental officials] appears to be tangential to the central issues of this case, and the preference for live testimony from witnesses with personal knowledge whose credibility could be at issue, the Court finds that, as far as the convenience of witnesses is concerned, the balance of interests weighs in favor of transfer.") (citation omitted).

In what appears to be a desperate attempt to maintain this action here, plaintiff's

8

counsel states that he "will agree to provide witnesses, the [p]laintiff, the family and the prescribing and treating physicians for deposition where and when the [d]efendant requests. . . . There are absolutely no witnesses that would be unavailable at a trial in the District of Columbia." Pl.'s Opp'n at 8.  While the Court has no reason to reject the accuracy of counsel's representations, surely plaintiff, the physician who prescribed Zyprexa to plaintiff and plaintiff's treating physicians, and maybe more importantly their other North Carolina patients, will be far less inconvenienced by having their testimony taken in North Carolina rather than having to endure the inconvenience of traveling to the District of Columbia, which is "[t]he most critical factor to examine under 28 U.S.C. § 1404(a) . . ." Pyrocap Int'l Corp., 2003 WL 1623898, at *4 (quoting Chung, 903 F. Supp. at 164); see also McGinnis, 181 F. Supp. 2d at 689 ("those witnesses who are willing to testify at trial without subpoena would be grossly inconvenienced by having to travel 800 miles to the Galveston Division courthouse, rather than approximately 50 miles to the nearest federal courthouse in the Western District of North Carolina.").  In addition, despite plaintiff's representations, counsel cannot guarantee that all of the witnesses located in North Carolina will be willing, when the time comes, to travel to this district.  In the event that occurs, this Court is without the authority to compel their attendance for trial.  See Fed. R. Civ. P. 45(b)(2).  And, while the same will be the case for a North Carolina court, unlike the potential witnesses located in this district who may not even possess relevant testimony, many of the essential witnesses are located in North Carolina where their presence can be compelled if they refuse to voluntarily present their testimony.  Pyrocap Int'l Corp., 2003 WL 1623898, at *5 ("'Courts have consistently transferred actions when the majority of witnesses live near the transferee

9

forum, or when the witnesses may not be subject to the subpoena power of the
transferor court.' . . . Many of the key witnesses with crucial knowledge or information
regarding the underlying facts of this case reside beyond the 100–mile limit of the
subpoena power of this Court, and therefore could not be compelled to appear as
witnesses within this District if unwilling to appear voluntarily.") (citation omitted).

Plaintiff also makes the argument that if this action is transferred "[a] potential result
could be that [p]laintiff would be unable to retain counsel in North Carolina, leaving
[p]laintiff without legal representation." Pl.'s Opp'n at 6. In response to this argument,
defendant notes that plaintiff's lead counsel resides in California and that his District of
Columbia counsel was retained "solely as local counsel to facilitate the filing in the
District of Columbia." Defendant Eli Lilly and Company's Reply Brief in Further Support
of its Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the Middle District of North
Carolina ("Def.'s Reply") at 2. Any inconvenience to plaintiff's counsel caused by the
transfer of this action is not a factor that carries considerable weight in the Court's
determination of whether or not to grant a motion to transfer pursuant to section
1404(a). See Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000)
("The location of counsel 'carries little, if any, weight in an analysis under § 1404(a).'")
(citing Vencor Nursing Centers, L.P. v. Shalala, 63 F. Supp. 2d 1, 6 n.4 (D.D.C. 1999));
Armco Steel Co., 790 F. Supp. at 324 ("The key to Armco's argument against transfer is
that counsel and counsel's document depositories are located in the District of
Columbia. The location of counsel carries little, if any, weight in an analysis under §
1404(a).") (citing Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 143-44
(D.D.C. 1979)). Plaintiff's counsel knew that his client resided and was injured in North

10

Carolina; therefore, he should have anticipated that this action could possibly be removed to a district in North Carolina since that is where all of the operative facts occurred and where many of the key witnesses are located. In addition, plaintiff's counsel has not represented he will have to withdraw from this matter if it is transferred; nor has plaintiff stated why he would be unable to retain local counsel in North Carolina.

There are also public interest factors the Court can consider in deciding whether a case should be transferred.[1] These public interest factors are: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." Trout, 944 F. Supp. at 16 (footnotes and citations omitted). Consideration of these factors also support the transfer of this action to North Carolina.

First, as to the law that will govern this litigation, North Carolina law will most likely control. To determine what law this Court would have to apply, if this case remains in this district, the Court would have to use the District of Columbia's choice of law analysis. Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129 F.3d 143, 148 (D.C. Cir. 1997). In a tort action such as the one before this Court, District of Columbia choice of law principles dictate that the Court look to the factors contained in the Restatement (Second) of Conflict of Laws § 145 (1971). These factors include the place of the injury; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of business and place of incorporation of the

---

[1]It is not necessary for the Court to address the public interests factors because it has concluded that the private interests weigh in favor of transfer. Ingram v. Eli Lilly & Co., No. Civ.A. 02-2023, 2003 WL 256729, at * 3 (D.D.C. Jan. 29, 2003) (citing Shields v. Eli Lilly & Co., No. Civ.A. 87-2166, 1987 WL 26426, at *2 (D.D.C. Nov. 23, 1987)). However, the Court will address the public interest factors as they further support the transfer of this action to North Carolina.

parties, and the place where the relationship is centered.  Id. at 19 (citations omitted).

Application of these factors would require the Court to apply the substantive law of

North Carolina and this result favors this action being transferred to North Carolina

because the courts in that jurisdiction have the greatest familiarity with North Carolina

law.  See Trout, 944 F. Supp. at 19 (transferring action to district court in Colorado even

though case involved federal statutes and regulations because it might also "in part,

involve the interpretation of Colorado law.").  Cf. Greater Yellowstone Coalition, 180 F.

Supp. 2d at 128-29 (denying defendant's motion to transfer where plaintiff's complaint

required interpretation of federal statues and federal government officials located in the

District of Columbia had been involved in the decision about which plaintiffs sought

judicial review).

Regarding where the local interest in deciding this controversy lies,[2] this district has,

at best, minimal interest in this matter, while North Carolina's interests are considerable

since the injury at issue occurred in that state to one of its residents, the doctors that

prescribed the drug and have treated and continue to treat plaintiff reside there, and the

drug that allegedly caused the injury was marketed, sold, and prescribed there.  Finally,

there is no allegation that transfer will result in unnecessary delay in resolving this

matter.  Although this factor is not controlling, it does provide further support for the

---

[2]Neither party addressed the congestion of the respective courts and therefore the Court will not address whether this factor would further support the transfer of this action to North Carolina.  However, a recent report issued by the Administrative Office of the United States Courts suggests that congestion in this Court is considerably greater than congestion in the Middle District of North Carolina.  Civil Justice Reform Act Report, Administrative Office of the United States Courts (September 30, 2002).

transfer of this action.[3]

As a final matter, this Court rejects plaintiff's position that this action should be transferred to the Southern District of Indiana, the defendant's place of incorporation, if a transfer is deemed appropriate. Defendant responds to this point by stating that although it "has no objection to the transfer of this suit to its home forum, North Carolina is the jurisdiction with the most pertinent contacts to this litigation and transfer there will most appropriately serve both the convenience of the parties and witnesses as well as the interests of justice as warranted by 28 U.S.C. § 1404(a)." Def.'s Reply at 8 n.9. The Court agrees. As noted already, plaintiff is a North Carolina citizen; his treating and prescribing physicians are North Carolina physicians; his alleged injuries and treatment occurred in North Carolina. Accordingly, as concluded above, North Carolina

_____

[3]This Court reached a different conclusion regarding a transfer request in Ingram v. Eli Lilly & Co., 251 F. Supp. 2d 1,__, No. CIV.A. 02-2023, 2003 WL 256729, at *5 (D.D.C. Jan. 29, 2003), and both parties reference Ingram in their papers. However the facts here are distinguishable from the facts in Ingram. In Ingram, the plaintiff sued defendant Lilly for injuries she allegedly suffered as a result of her mother's ingestion of the pharmaceutical drug diethylstilbestrol ("DES") during her mother's pregnancy with the plaintiff. Id. at *1. At the time Ingram's mother ingested DES, she was a resident of the State of Washington. Id. In denying the defendant's motion to transfer the action to the State of Washington, this Court noted:

> neither Washington nor the District of Columbia have a
> particularly strong interest in this case as a local controversy
> because neither plaintiff nor her mother are currently
> residents of Washington or the District of Columbia and
> none of the defendants are incorporated in either
> jurisdiction. In addition, there is nothing uniquely local
> about DES litigation as the product was marketed and
> dispensed throughout the nation.

Id. at *4. Furthermore, in Ingram, it appeared that the witnesses vital to the action did not reside in the State of Washington and thus they "would [not] be any more inconvenienced by having to travel to the District of Columbia, as compared to the State of Washington." Id. at *3. Unlike Ingram, plaintiff and his prescribing and treating physicians still reside in North Carolina, which is also the location where the drug was prescribed and purchased. This Court also noted in Ingram that one of its members, Magistrate Judge Kay, had "extensive experience mediating DES claims" and this factor further convinced the Court that transfer was not warranted.

clearly has the greatest interest in the resolution of this controversy. See, e.g., McGinnis, 181 F. Supp. 2d at 690 (rejecting plaintiff's argument that the wrong that formed the basis of his strict products liability claims against the defendant "primarily took place at Lilly's headquarters in Indianapolis, Indiana, where the initial decision was made to mislead or not to warn physicians and consumers about the dangers of Prozac . . . In its [c]omplaint, [p]laintiff avers that Millie McGinnis' death was proximately caused by Lilly's affirmative misrepresentations and/or failure to warn consumers, via their prescribing physicians . . . In this case, then, the alleged wrong most likely occurred in North Carolina, since Lilly failed to warn and/or communicated false information to the prescribing physician . . . and the consumer . . . in North Carolina."). In sum, because the Court concludes that all of the operative facts concerning this action occurred in North Carolina, and the private and public interests favor this action's transfer to that jurisdiction, the Court will grant the defendant's motion and this action shall be transferred to the Middle District of North Carolina.

    **SO ORDERED** on this 4th day of June, 2003.[4]

                                        REGGIE B. WALTON
                                        United States District Judge

_____

    [4]An appropriate Order accompanies this Memorandum Opinion.

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| THERESA M. OWENS | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]     Civil Action No. 03-CV-01798 (EGS) |
| | ] |
| ELI LILLY AND COMPANY | ] |
| | ] |
| Defendant. | ] |

PLAINTIFF THERESA M. OWENS' ANSWERS TO
DEFENDANT ELI LILLY AND COMPANY'S FIRST SET OF INTERROGATORIES

1.     Please state your full legal name, your social security number and your date and place of birth, including the name and address of the hospital at which you were born, if any. If you have ever been known by any other name or names, please state each such name and when each such other name was used.

ANSWER:     a.     Theresa M. Owens

           b.     SS #   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

           c.     DOB:   2/18/63

           d.     St. Margaret's Hospital, Dorchester, MA

           e.     Theresa M. Kelley, 2/18/63 - 10/28/89

2.     Please state your present residential address and all former residential addresses and the inclusive dates for each.

ANSWER:     a.     147 Beechnut Rd
                  Westwood, MA 02090

                  6/91 - present

           b.     147 West Sixth Street
                  South Boston, MA 02127

                  10/89 - 6/91

      c.       31 Druid Street
                Mattapan, MA 02126

                5/70 - 10/89

      d.       15 Groveland St.
                Mattapan, MA 02126

                2/18/63 - 5/70

3.     Please state your marital status.  If married, please state your spouse's full legal name, his residential address and the date of your marriage.  If formerly married, for each spouse, please state his full legal name, his present residential address, the date of your marriage, the date of its termination, and the method by which it was terminated (e.g., annulment, divorce, death of spouse).

**ANSWER:**   a.      Married

             b.      Robert K. Owens

             c.      147 Beechnut Rd., Westwood, MA 02090

             d.      10/28/89

4.     Please state the full legal name of each of your parents, including your mother's maiden name, their places and dates of birth and their current residential address or addresses.  If either of your parents is deceased, please state the date, place and cause of death.

**ANSWER:**   a.      Mother: Patricia Kelley

             I.       Patricia Brennan

             ii.     1/10/35

             iii.    Boston, MA

             iv.    31 Druid St., Dorchester, MA 02126

           b.      Father: Paul Kelley

             I.       8/1/27

             ii.     Boston, MA

             iii.    31 Druid St., Dorchester, MA 02126

5.    Please state the address of each residence of your mother for the period beginning five years prior to the date of birth of your mother's first child through the present.

ANSWER:    a.    569 River Street
                 Mattapan, MA 02126

                 1956 - 9/59

           b.    15 Groveland St.
                 Mattapan, MA 02126

                 9/59 - 5/70

           c.    31 Druid St.
                 Mattapan, MA 02126

                 5/70 - present

6.    If you contend that your mother took diethylstilbestrol ("DES" or "stilbestrol") during her pregnancy with you, please state the name and address of each physician who prescribed it; if any physician who prescribed DES is deceased, please state the name and address of the current custodian of his or her medical records; and please state the purpose for which the drug was prescribed.

ANSWER:    a.    Drs. Robert Keough and Edward Carey, Coddington St., Quincy, MA.

           b.    Custodian of medical records unknown

           c.    DES was prescribed to prevent miscarriage

7.    Please identify, by name and address, each pharmacy or other supplier that dispensed the DES allegedly ingested by your mother while pregnant with you. If you do not know the name of the pharmacy, please state the name and address of each pharmacy or retail drug outlet that was patronized by your mother or father during the twelve months that preceded your birth.

ANSWER:        McDonough Drug, Dorchester Ave., Dorchester, MA.

8.    Describe in detail the physical appearance of the diethylstilbestrol you allege your mother ingested, including its form (for example, pill, injection, capsule), the shape, color, or size of any pill, tablet or capsule, the dosage of the DES your mother took, and any markings that may have appeared on the product.

ANSWER:        small, uncoated, round, white pills with a cross-score and no additional

markings.

9.    Please set forth all information you have concerning the identity of the manufacturer or supplier of the DES your mother allegedly ingested while pregnant with you. State all facts upon which you base this identification, including, if known, but not limited to, the trade, generic, or brand name of the DES you allege your mother ingested. Identify by name and address all witnesses with personal knowledge of these facts.

ANSWER:        Statement of Patricia Kelley.  Marketing materials such as PDR, Matrix,

Pill Identification Tables.  Lilly wholesaler documents.  Plaintiff reserves the right to supplement

this Answer as discovery progresses.

10.    Please state the date on which you first believed that your mother took DES during her pregnancy with you, the date you first discovered any injury you claim to be due to your exposure to DES, and the date you first believed that DES manufacturers in general or any DES manufacturer in particular acted in any way wrongly, negligently or tortuously in the manufacture or distribution of DES or in the warnings about the use of DES.

ANSWER:    a.    Plaintiff first believed that her mother took DES in approximately 1981.

b.    In 1993, Plaintiff was advised by Dr. Merle Berger that in utero DES

exposure might have had some effect on the development of her

reproductive tract.  The nature and consequences of this effect were

unknown and vague.  Plaintiff did not consider this effect an injury as

such and continued to attempt pregnancy.  Plaintiff suffered no pain,

needed no treatment to correct this effect, and did not realize she was

debilitated.  Plaintiff had no information, suggestion, hunch, or inkling

that the manufacturer's conduct in testing or promoting this drug was

wrongful or that the drug was unreasonably dangerous until November

2002.

c.    November 2002 was the first date Plaintiff believed that DES

manufacturers in general or any DES manufacturer in particular acted in

any way wrongly, negligently, or tortuously in the manufacture or

distribution of DES or in the warnings about the use of DES.

11.    Please state the names and last known addresses of any attorneys with whom you have discussed or exchanged information regarding your injuries, DES in general, or Lilly.  State the approximate dates of each such discussion or exchange of information.

**ANSWER:**    None, other than my present attorneys who were retained in November,

2002.

12.    Please state the number of pregnancies that your mother has had, and for each such pregnancy that your mother has had, please state the approximate date the pregnancy began; the name and address of each physician, clinic, hospital or other health care professional or facility who treated your mother during that pregnancy; the identities of any drugs prescribed to or taken by your mother during that pregnancy; the approximate date the pregnancy ended; the method by which the pregnancy ended (e.g., spontaneous abortion, voluntary abortion, stillborn delivery, live birth); and if the pregnancy ended in a live birth, the name of the child and his or her present residential address.

**ANSWER:**    Plaintiff's mother has had five pregnancies as follows:

a.    Paul G. Kelley - LMP approx. 2/14/61, Dr. Robert Keough and Dr. Edward Carey, Coddington St., Quincy, MA.  DES was prescribed during this pregnancy.  Live birth, 11/1/61 at St. Margaret's Hospital, Dorchester, MA.  Current address is 399 Old Farm Road, Hanover, MA 02339.

b.    Theresa Owens - LMP approx. 5/13/62, Dr. Robert Keough and Dr. Edward Carey, Coddington St., Quincy, MA.  DES was prescribed during this pregnancy.  Live birth, 2/18/63, St. Margaret's Hospital, Dorchester, MA.  Current address is 147 Beechnut Rd, Westwood, MA 02090.

c.    Sheila A Roake - LMP approx. 1/ 21/64, Dr. Robert Keough and Dr. Edward Carey, Coddington St., Quincy, MA.  DES was prescribed during this pregnancy.  Live birth, 10/7/64, St. Margaret's Hospital, Dorchester, MA.  Current address is 5 Norwell St., Norfolk, MA 02056.

d.    Thomas J. Kelley - LMP approx. 8/24/65, Dr. Robert Keough and Dr. Edward Carey, Coddington St., Quincy, MA.  Live birth, 5/31/66, St. Margaret's Hospital, Dorchester, MA.  Current address is 19 Adams Rd., Walpole, MA 02081.

e.    Kevin M. Kelley - LMP approx. 8/1/69, Dr. Robert Keough and Dr. Edward Carey, Coddington St., Quincy, MA.  Live birth, 5/7/70, St.

Margaret's Hospital, Dorchester, MA.  Current address is 31 Druid St.,
Mattapan, MA 02126.

13.    Please describe in detail each and every physical or emotional injury you claim to
have experienced as a result of exposure to DES and for each such injury, please state the date of
its diagnosis; identify by name and address each health care provider (e.g., physician,
psychiatrist, psychologist, clinic, hospital, other health care or mental health professional or
facility) that has examined, diagnosed or treated you, or been consulted with regard to each such
injury; and describe in detail the treatment rendered by each such health care provider.

**ANSWER:**    a.    T-shaped hypoplastic uterus, diagnosed in January 1993 by Dr. Merle

Berger, Boston IVF, Brookline, MA.

b.    Primary infertility, diagnosed in approximately 1993 by Dr. Merle Berger,

Brookline, MA.

c.    Diminished sex life

d.    Diminished self-esteem and sense of powerlessness due to inability to

procreate

e.    Impaired relationships with friends and relatives who have healthy

children

f.    Anger and resentment that reproductive potential is damaged

g.    Impaired relationships with friends and relatives who have healthy

children

h.    Anger and resentment that reproductive potential is damaged

I.    Inability to fulfill biological destiny

j.    Relationship with spouse complicated by anger, resentment, and

disappointment

k.    Difficulty participating in social activities with other parents

l.    Feelings of being punished, self-hatred, inadequacy, and inferiority

m.    Depression

14.    Please identify by name and address each physician, psychiatrist, psychologist, clinic, hospital or other health care or mental health professional or facility that has rendered any medical examination, diagnosis, consultation, advice or treatment to you for any health problem, emotional problem or injury other then those which you allege are related to diethylstilbestrol.

**ANSWER:**    Plaintiff objects to this Interrogatory as overly broad, burdensome and irrelevant,

nor will it lead to the discovery or any relevant information pertaining to Plaintiff's claims.  In

addition, Plaintiff objects to any health care provider not relevant to her gynecological or

associated conditions.  Without waiving said objection, the following have provided GYN

consultation and/or examinations:

a.    Dr. Ann Goulart
      300 Congress St.
      Quincy, MA 02169

b.    Dr. Merle Berger
      Boston IVF
      One Brookline Place
      Brookline, MA

c.    Neponset Health Center
      398 Neponset Ave.
      Dorchester, MA

15.    Please state the number of pregnancies that you have had and for each pregnancy, please state the approximate date the pregnancy began; the name and address of each health care provider (e.g., physician, clinic, hospital or other health care professional or facility) who examined or treated you during your pregnancy; the approximate date the pregnancy ended; the method by which the pregnancy ended (e.g., live birth, spontaneous abortion, voluntary abortion, stillborn delivery); and, if the pregnancy ended in a live birth, the name of the child and his or her present residential address.

**ANSWER:**    Plaintiff has been diagnosed with primary infertility and therefore has never been

pregnant.

16.    Please state all means (including, without limitation, natural conception, IUI, and IVF) through which you have attempted pregnancy, including the date ranges of these attempts; and identify by name, address, and date range each partner with whom you made such attempts.

**ANSWER:**        See Plaintiff's medical records.

17.    Please identify by name, address, and date(s) of treatment each physician, clinic, hospital, or other health care provider that has rendered any medical examination, diagnosis, consultation, advice or treatment to you in connection with your attempts at pregnancy.

**ANSWER:**        See Plaintiff's Answer to Interrogatory No. 14.

18.    If you claim to have suffered or claim you will suffer a loss of earnings as a result of the injuries alleged, state from whom such earnings would have been payable, the total amount of the alleged loss and state any amounts for which you have been reimbursed, and by whom, for loss of earnings as a result of the injuries alleged.

**ANSWER:**        Plaintiff is not making a claim for loss of earnings at this time.

19.    State separately the total amounts, including future amounts, if any, claimed by you as special damages for:  (a) services provided by any health care or mental health care provider (including, without limitation, physicians, psychiatrists, psychologists, teachers, rehabilitation therapists, physical therapists, occupational therapists, speech therapists, counselors, social workers and nurses); (b) hospital services; and c) medical supplies.

**ANSWER:**    A listing of Plaintiff's Special Damages will be forwarded upon receipt and

compilation.

20.    Please state the full name, present address, area of expertise and professional training of each person expected to testify as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and the opinions to which the expert is expected to testify, provide a summary of the grounds for each opinion and identify any and all written reports made by each such expert concerning his or her findings and opinions.

**ANSWER:**    Plaintiff has not decided upon her experts, but is considering calling the

following:

a.    Harris Busch, M.D., Ph.D.
Baylor Department of Pharmacology
1 Baylor Plaza, Room 319D
Houston, TX  77030

Dr. Busch is an expert in the field of Pharmacology and Toxicology, and is expected to

testify as to the state of the art.  Specifically, Dr. Busch will testify that Lilly failed to adequately

test for the safety of DES.

        b.      Dr. Merle Berger
                Boston IVF
                One Brookline Place
                Brookline, MA

Dr. Berger is an expert in the field of Obstetrics and Gynecology and Reproductive Endocrinology, and is expected to testify that Plaintiff's exposure in utero caused her uterine and reproductive anomalies and infertility. In addition, Dr. Berger is expected to testify as to Plaintiff's prognosis, and any medical and/or surgical treatment required for same.

        c.      Daniel M. Sheehan, Ph.D.
                1422 Scott Street
                Little Rock, Arkansas 72202

Dr. Sheehan is an expert in the field of Toxicology. He is expected to testify as to the standard of care of the pharmaceutical industry in the employment of toxicological information gleaned from animal testing and will testify that said standard of care was violated by the defendant in its initial and then afterward promotion of DES for use in pregnancy.

        d.      Brian Strom, M.D., MPH
                University of Pennsylvania Medical Center
                Department of Epidemiology and Biostatistics
                824 Blockley Hall, 423 Guardian Drive
                Philadelphia, PA 19104-6021

                Philip Cole, M.D., M.P.H.
                University of Alabama Medical School
                Ryals School of Public Health
                1665 University Boulevard
                Birmingham, AL 35294

Drs. Strom and Cole are experts in the field of Epidemiology and are expected to testify that Plaintiff's reproductive tract and anatomic anomalies are causally related to her in utero DES exposure and placed her at high risk for poor pregnancy outcomes, infertility, and

pre-term delivery.

  21. Please identify all other persons having personal knowledge of any of the facts bearing on your claim, and for each such person state his or her address, telephone number and relationship to you, if any.

**ANSWER:** None, other than those persons previously aforementioned.  Plaintiff reserves the

right to supplement this Answer as discovery progresses.

  22. If your attorney, or any one acting on your behalf, has obtained statements in any form from any person concerning any of the events that occurred in regard to the facts alleged in your Complaint, please identify the person or persons who took the statement; identify the person currently in custody of the statement; and state whether the statement was oral or written, and, if oral, whether and in what manner it was recorded.

**ANSWER:** My attorneys are in possession of statements from Dr. Merle Berger and Patricia

Kelley.  Plaintiff reserves the right to supplement this Answer as discovery progresses.

The information contained in these answers as well as the word usage, sentence structure and opinions, are not solely that of the declarant, rather they are the product of counsel in preparation with declarant.

I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Dated: Oct 14, 2003

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine          #7864

1320 - 19th Street, N.W.
Fifth Floor
Washington, D.C.   20036
202/833-8040

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd Day of October, 2003, a true and correct copy of the foregoing Plaintiff Theresa OWENS' ANSWERS to Defendant Eli Lilly and Company's First Set of Interrogatories was served via first class, postage prepaid, U.S. Mail, on counsel for Defendant:

James J. Dillon, P.C.
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600

Lawrence H. Martin, Esq.
Foley Hoag LLP
1747 Pennsylvania Avenue, N.W.
Suite 1200
Washington, D.C. 20006-4604

_____
Aaron M. Levine

EXHIBIT D




**Boston IVF**
*The Brookline Center*

One Brookline Place
Brookline, MA 02446
(617) 735-9000
Fax: (617) 738-8993
www.bostonivf.com

*Affiliated with:*

 Harvard
Medical
School

 Beth Israel
Deaconess
Medical Center

*Reproductive Endocrinology*
Michael M. Alper, M.D.
Steven R. Bayer, M.D.
Brian M. Berger, M.D.
Merle J. Berger, M.D.
Pei-Li Huang, M.D.
⬤yn P. Oskowitz, M.D.
⬤S. Penzias, M.D.
Richard H. Reindollar, M.D.
Kim L. Thornton, M.D.
Robert M. Weiss, M.D.

*Embryology/Cryobiology*
R. Douglas Powers, Ph.D.
*Chief Scientific Officer*
Michele Austin, Ph.D.
C. Brent Barrett, Ph.D.
Doria Harris, Ph.D.
Shunping Wang Ph.D.
Jeannine Witmyer, Ph.D.

Jeane Ungerleider, L.I.C.S.W.
*Director of Counseling Services*

Alice D. Domar, Ph.D.
*Director*
*Mind/Body Center for*
*Women's Health at Boston IVF*

Ronald P. Jones
*Chief Operating Officer*

⬤ffice
40 Second Ave.
Waltham, MA 02451

*Centers*
Brookline, MA
Quincy, MA
Waltham, MA
Lincoln, RI

*Affiliated Practices*
Bangor, ME
Hamilton, Bermuda
Lewiston, ME
Nantucket, ME
Portland, ME

*Hospital Partnerships*
MetroWest Medical Center,
Framingham, MA
Mount Auburn Hospital,
Cambridge, MA

June 13, 2003

Attorney Aaron M. Levine
Aaron M. Levine & Associates
1320 Nineteenth Street, NW
Fifth Floor
Washington, D.C. 20036

**RE    MRS. THERESA OWENS
          D.O.B. 2-18-63**

Dear Mr. Levine:

Theresa Owens was a patient of mine from 1992 until 1996 during which time I treated her for primary infertility. Several diagnostic tests were obtained but no treatment was instituted. The tests included semen analysis (slightly low) and hysterosalpingogram which revealed patent tubes but a small, T-shaped uterine cavity with several border irregularities such as constrictions and protrusions very typical of DES exposure in utero. In addition, she had a normal post-coital test and a laparoscopy which revealed normal external pelvic organs but a very small uterine as determined by sounding.

It was and is my impression that DES exposure in uterine was the sole cause of this couples' primary infertility. We discussed various forms of standard treatment such as assisted reproductive technology which had a low chance of success and we also discussed the possibility of gestational surrogacy and adoption.

My opinion that DES exposure in utero is the cause of Theresa's primary infertility is based on my own clinical experience (having examined, treated and consulted on numerous DES exposed over the course of my thirty-two years in practice. In addition, I have also attended and given numerous seminars on the subject and am quite familiar with the volume of literature regarding DES related disorders and abnormalities.

 

**Boston IVF**

*Affiliated with:*

 Harvard Medical School

 Beth Israel Deaconess Medical Center

-2-

Please let me know if I can be of any further help in this matter.

Sincerely,

*Dictated but not read*

Merle J. Berger, M.D.
Associate Clinical Professor
Obstetrics, Gynecology and Reproductive Biology
Harvard Medical School

MJB/dms

EXHIBIT E

# DES Cases Filed By Aaron M. Levine, Esq.
## Against Eli Lilly and Company
## In the District of Columbia
## March 2000 – November 2003

| NO. | CASE | COURT | FILING DATE | RESIDENCE | PLACE OF ALLEGED EXPOSURE |
|---|---|---|---|---|---|
| 1. | Acerra, Anne W. and William J. Acerra | DC, USDC 1:02CV00800 | 04/26/02 | MA | MA |
| 2. | Albers, Katherine M. and James G. Albers | DC, USDC 1:01CV02048 | 09/27/01 | FL | IL |
| 3. | Albin, Myra Dee | DC, Superior CA No. 03-0008837 | 11/12/03 | FL | NY |
| 4. | Allen, Daren Elizabeth | DC, USDC 1:02CV02027 | 10/16/02 | IL | IL |
| 5. | Arnoldi, Tammi and Rick Arnoldi | DC, USDC 1:02CV01094 | 06/05/02 | CA | CA |
| 6. | Augusterfer, Kimberly A. | DC, USDC 1:01CV01996 | 09/20/01 | MD | MD |
| 7. | Bailer, Jennifer E. | DC, Superior CA No. 02-0005873 | 07/17/02 | OH | OH |
| 8. | Bala, Elisabeth Paff and Edward Bala | DC, USDC 1:01CV02049 | 09/27/01 | PA | PA |
| 9. | Barba, Kate; Burgess, Claire Christine | DC, USDC 1:00CV00656 | 03/24/00 | MA | MA |
| 10. | Bernier, Marie and J. Richard Bernier | DC, Superior CA No. 01-0009094 | 12/13/01 | MA | OH |
| 11. | Blitsch, Marianne | DC, Superior CA No. 03-0000416 | 01/17/03 | CA | NY |
| 12. | Bohlin, Nancy A., individually and as representative of Samantha A. Bohlin | DC, USDC 1:03CV00081 | 01/17/03 | MA | MA |
| 13. | Bond, Caroline Lois | DC, USDC 1:01CV00444 | 02/28/01 | ME | ME |
| 14. | Bone, Lana M. and Richard Lee Bone | DC, Superior CA No. 01-0007953 | 10/25/01 | TX | TX |
| 15. | Bonello, Christi S. and Kurt Bonello | DC, USDC 1:02CV00870 | 05/06/02 | PA | PA |
| 16. | Boxill, Joanna K. | DC, Superior CA No. 00-0085686 | 11/27/00 | MA | MA |
| 17. | Boyland, Allison F. | DC, Superior CA No. 03-0004424 | 5/29/03 | MA | MA |
| 18. | Boyson, Barbara Rosann and Mark A. Boyson | DC, USDC 1:02CV00668 | 04/09/02 | WA | MN |
| 19. | Brooks, Colette | DC, Superior CA No. 03-0006284 | 7/23/03 | CA | CA |
| 20. | Brown, Kara Kristine | DC, USDC 1:00CV02699 | 11/08/00 | WV | WV |

- 1 -

| NO. | CASE | COURT | FILING DATE | RESIDENCE | PLACE OF ALLEGED EXPOSURE |
|---|---|---|---|---|---|
| 21. | Burns, Lisa T. and James Burns | DC, USDC 1:02CV00695 | 04/11/02 | NY | NY |
| 22. | Cloey-Pallozzi, Charlene | DC, Superior CA No. 01-000550 | 01/19/01 | MD | MD |
| 23. | Connolly, Susan | DC, Superior CA No. 03-0008838 | 11/12/03 | MA | MA |
| 24. | Cook-Melloy, Terrill | DC, USDC 1:01CV01073 | 05/16/01 | MN | MA |
| 25. | Coy, Debra Ann | DC, USDC 1:01CV01072 | 05/16/01 | FL | PA |
| 26. | Crisman, Kimberly Marie, individually and as representative of Madison Faith Crisman, and John Crisman | DC, Superior CA No. 03-0007981 | 9/29/03 | MD | N/A |
| 27. | Currie, Elaine M. and Craig P. Currie | DC, USDC 1:02CV01032 | 05/28/02 | MA | MA |
| 28. | D'Amato, Robin | DC, USDC 1:02CV00869 | 05/06/02 | NY | NY |
| 29. | Danzer, Roberta J. and David M. | DC, Superior CA No. 03-0005469 | 07/03/03 | IL | IL |
| 30. | Dean, Ellen J. | DC, USDC 1:02CV00177 | 02/01/02 | MA | MA |
| 31. | Dibello, Diana M. | DC, USDC 1:00CV00753 | 04/10/00 | PA | MA |
| 32. | Dimanche, Carrie and Steve Dimanche | DC, Superior CA No. 03-0000421 | 01/17/03 | MA | CT |
| 33. | Dinkle, Nancy G. | DC, Superior CA No. 01-0008385 | 11/13/01 | TX | TX |
| 34. | Dobbelman, Stacey | DC, USDC 1:00CV02385 | 10/03/00 | MN | MN |
| 35. | Doherty, Judith A. | DC, USDC 1:00CV01943 | 08/11/00 | PA | MA |
| 36. | Dunseth, Nicole Lee | DC, Superior CA No. 03-0007982 | 9/29/03 | NV | IL |
| 37. | Eisenberg, Helaine I. | DC, Superior CA No. 02-005444 | 07/17/02 | NY | NY |
| 38. | Ellison, Julia | DC, USDC 1:01CV01214 | 06/04/01 | CO | IN |
| 39. | Episcopo, Cynthia Mae | DC, Superior CA No. 03-0010356 | 12/13/02 | DE | PA |
| 40. | Epstein, Mona R. and Steven Raucher | DC, Superior CA No. 02-0000236 | 01/11/02 | CA | NY |
| 41. | Eskandarani, Doreen | DC, USDC 1:00cv00873 | 04/20/00 | MN | WI |
| 42. | Fastino, Lori Ann | DC, Superior CA No. 02-0008917 | 10/15/02 | RI | MA |
| 43. | Figueroa, Melaine M. and Roque R. Figueroa | DC, USDC 1:01CV02555 | 12/13/01 | MA | MA |

| NO. | CASE | COURT | FILING DATE | RESIDENCE | PLACE OF ALLEGED EXPOSURE |
|---|---|---|---|---|---|
| 44. | Forthman, Jennifer Lee | DC, Superior CA No. 03-0002012 | 03/19/03 | SC | VA/DC |
| 45. | Foster, Meredith | DC, USDC 1:01CV00445 | 02/28/01 | OK | OK |
| 46. | Fraser, Lori Jean | DC, USDC 1:01CV00897 | 04/25/01 | MA | MA |
| 47. | Frohnapple, Sandra L., individually and as representative of Hannah Frohnapple, deceased | DC, USDC 1:01CV01566 | 07/19/01 | OH | OH |
| 48. | Galvin, Paula J. | DC, Superior CA No. 03-0006682 | 8/7/03 | KS | KS |
| 49. | Gassmann, Cynthia Lee | DC, Superior CA No. 03-0001176 | 02/19/03 | NY | NY |
| 50. | Giblin, Elizabeth | DC, USDC 1:01CV01568 | 07/19/01 | FL | FL |
| 51. | Gibson-Rodgers, Kathleen | DC, USDC 1:01CV00261 | 02/02/01 | CA | CA |
| 52. | Goldstein, Linda J. | DC, USDC 1:01CV00450 | 02/28/01 | MN | MN |
| 53. | Gosselin, Jennifer Anne | DC, USDC 1:01CV00466 | 03/01/01 | ME | MA |
| 54. | Gurbel, Anne Y. and Paul A. Gurbel | DC, Superior CA No. 01-0007952 | 10/25/01 | MD | NC |
| 55. | Hansch, Susan Lynne | DC, Superior CA No. 03-0001536 | 03/04/03 | CA | PA |
| 56. | Happel, Julie A. | DC, Superior CA No. 03-0006681 | 08/07/03 | MA | MA |
| 57. | Hartl, Kathleen and William Durkin, Jr. | DC, USDC 1:01CV01666 | 08/01/01 | VT | MA |
| 58. | Hefter, Ninette Louise and Gray Martin Hefter | DC, Superior CA No. 03-0002540 | 03/27/03 | PA | PA |
| 59. | Hernandez, Anita R. | DC, USDC 1:01CV01567 | 07/19/01 | TX | TX |
| 60. | Hilleary, Robin Sue and James Hilleary | DC, USDC 1:03CV00082 | 01/17/03 | CO | NJ |
| 61. | Huffman, Joan H. and Ronald P. Huffman | DC, USDC 1:01CV01997 | 09/20/01 | SC | SC |
| 62. | Ingram, Elisabeth Arnold | DC, USDC 1:02CV02023 | 10/15/02 | OK | WA |
| 63. | Jaworowski, Elizabeth A. | DC, USDC 1:01CV02521 | 12/06/01 | NY | PA |
| 64. | Kalles, Darcy Ann and Brian L. Kalles | DC, Superior CA No. 01-0007950 | 10/25/01 | FL | TX |
| 65. | Kaufman, Randy B. and Sandy Kaufman | DC, USDC 1:01CV01998 | 09/20/01 | NJ | NJ |
| 66. | Kihm, Lydia | DC, USDC 1:00CV02647 | 11/02/00 | MN | OH |

| NO. | CASE | COURT | FILING DATE | RESIDENCE | PLACE OF ALLEGED EXPOSURE |
|---|---|---|---|---|---|
| 67. | Kogen, Lynn Mandell and Jay Steven Kogen | DC, USDC 1:01CV02291 | 11/02/01 | CA | TX |
| 68. | Kramer, Jayne D. | DC, Superior CA No. 03-0008401 | 10/16/03 | MA | MD |
| 69. | Krueger, Alicia | DC, USDC 1:00CV01573 | 06/29/00 | AZ | TN |
| 70. | Lacey, Maria | DC, Superior CA No. 03-0007450 | 09/04/03 | CA | CA |
| 71. | Lamb, Kelly J. | DC, USDC 1:02CV02020 | 10/15/02 | CO | WI |
| 72. | Lebens, Victoria A. | DC, USDC 1:02CV00830 | 05/02/02 | NJ | PA |
| 73. | Leister, Maureen Kirby | DC, Superior CA No. 03-0004000 | 5/16/03 | VA | N/A |
| 74. | Lenander, Patricia and John Lenander | DC, USDC 1:00CV02700 | 11/08/00 | IL | MN |
| 75. | Liberty, Nikki L. | DC, USDC 1:01CV00770 | 04/10/01 | VA | NY |
| 76. | Levinson, Debra Lynn | DC, USDC 1:02CV02021 | 10/15/02 | MI | MI |
| 77. | Mages, Marilyn | DC, USDC 1:01CV00584 | 03/20/01 | IL | MI |
| 78. | Manning, Brenda and Brian Steven Manning | DC, USDC 1:03CV01845 | 09/04/03 | MA | MA |
| 79. | Martin, Melissa Dawn | DC, USDC 1:02CV02022 | 10/15/02 | ME | MS |
| 80. | Miller, Lauren Gail | DC, Superior CA No. 03-0002013 | 03/19/03 | CA | CA |
| 81. | Moore, Amy and Joseph Moore | DC, USDC 1:02CV00693 | 04/11/02 | NY | MA |
| 82. | Mortenson, Catherine Helen | DC, Superior CA No. 03-0004425 | 5/29/03 | NY | NJ |
| 83. | Moyer, Elizabeth Ann individually and as mother, guardian and next friend of Thomas Allen Moyer, minor | DC, USDC 1:01CV00449 | 02/28/01 | ME | PA |
| 84. | Mucha, Michele A. | DC, USDC 1:01CV00738 | 04/05/01 | MI | MI |
| 85. | Mullikin, Terri E. and Jeff Mullikin | DC, USDC 1:01CV01875 | 08/31/01 | MD | PA |
| 86. | Nevins, Barbara | DC, Superior CA No. 01-0005398 | 07/19/01 | IN | KY |
| 87. | Newman, Anne Ryan, individually and as representative of Reid T. Newman and William C. Newman | DC, Superior CA No. 03-0000418 | 01/17/03 | CA | MA |
| 88. | Nord, Carol Ann and Michael William Nord | DC, USDC 1:02CV00694 | 04/11/02 | WA | WA |

| NO. | CASE | COURT | FILING DATE | RESIDENCE | PLACE OF ALLEGED EXPOSURE |
|---|---|---|---|---|---|
| 89. | Olsson, Amy | DC, Superior CA No. 00-0008606 | 11/27/00 | Sweden | MA |
| 90. | O'Toole, Cheryl S. | DC, Superior CA No. 03-0006283 | 7/23/03 | MA | MA |
| 91. | Owens, Theresa M. | DC, Superior CA No. 03-0006684 | 08/07/03 | MA | MA |
| 92. | Pasternack, Lisa Gail | DC, USDC 1:02CV00669 | 04/09/02 | PA | PA |
| 93. | Perdigao, Michelle | DC, USDC 1:01CV01061 | 05/15/01 | MA | MA |
| 94. | Perlberg, Deborah L. | DC, USDC 1:01CV00185 | 01/29/01 | WI | WI |
| 95. | Peterson, Nancy | DC, USDC 1:01CV01414 | 06/26/01 | MA | MA |
| 96. | Poss, Alexis | DC, USDC 1:01CV01414 | 09/15/00 | MA | PA |
| 97. | Powsner, Judith D. | DC, Superior CA No. 03-0008402 | 10/16/03 | MA | NY |
| 98. | Reed, Lisa S. | DC, Superior CA No. 03-0006683 | 08/07/03 | TX | TX |
| 99. | Reeves, Tammy L. | DC, Superior CA No. 03-0000417 | 01/17/03 | WA | IL |
| 100. | Reusch, Marcia A. | DC, USDC 1:00CV02214 | 09/15/00 | KY | KY |
| 101. | Reynolds, Katherine S. | DC, USDC 1:00CV02213 | 09/15/00 | TX | TX |
| 102. | Roberge, Christine M. | DC, Superior CA No. 03-0003219 | 04/22/03 | MA | NY |
| 103. | Roing, Celia; Mullen, Diane; and Philbrick, Elaine | DC, Superior CA No. 02-0008916 | 10/15/02 | MA | MA |
| 104. | Rosenfeld,, Robin and Robert Rosenfeld | DC, USDC 1:02CV00801 | 04/26/02 | PA | PA |
| 105. | Rossin, Nancy E. | DC, Superior CA No. 03-000419 | 01/17/03 | MA | MA |
| 106. | Russell, Janice C. | DC, USDC 1:01CV00311 | 02/06/01 | MA | MA |
| 107. | Santos, Robin Peterson | DC, Superior CA No. 03-0009047 | 11/12/03 | PA | NY |
| 108. | Scaramuzzi, Doreen as mother and next friend of Harry J. Scaramuzzi, minor | DC, USDC 1:01CV01095 | 05/21/01 | RI | RI |
| 109. | Schardel, Lynn L. | DC, USDC 1:01CV00448 | 02/28/01 | ME | MA |
| 110. | Seele, Deborah; Garner, Jean individually and as next friend of James Garner, minor | DC, USDC 1:00CV00925 | 04/27/00 | MA | MA |

| NO. | CASE | COURT | FILING DATE | RESIDENCE | PLACE OF ALLEGED EXPOSURE |
|---|---|---|---|---|---|
| 111. | Silva, Michaellean | DC, USDC 1:01CV00583 | 03/20/01 | MA | MA |
| 112. | Silver, Lynne M. | DC, Superior CA 03-0000423 | 01/17/03 | MA | MA |
| 113. | Snyder, Kathleen Moriarty and Douglas Clay Snyder | DC, Superior CA No. 02-0003594 | 05/09/02 | WA | WA |
| 114. | Stevens, Karen, individually and as representative of Maddy Olivia Stevens and Fenner Zimble Stevens | DC, USDC 1:03CV00265 | 02/19/03 | CT | MA |
| 115. | Stewart, Lucinda Ophelia | DC, Superior CA No. 03-0007449 | 09/04/03 | CA | CA |
| 116. | Sumrall, Erin Margaret and Brice Lynn Sumrall | DC, USDC 1:02CV00670 | 04/09/02 | TX | LA |
| 117. | Taylor, Jennifer Dawn | DC, USDC 1:01CV00952 | 05/04/01 | TX | TX |
| 118. | Wagner, Dana Renee | DC, Superior CA No. 03-0001535 | 03/04/03 | NV | NJ |
| 119. | Wall, Kathryn | DC, USDC 1:00CV00769 | 04/11/00 | CA | CA |
| 120. | Whitener, Anjanette Davis | DC, Superior CA No. 03-0002541 | 04/02/03 | TX | TX |
| 121. | Whitten, Jane Edwards | DC, Superior CA No. 03-0000422 | 01/17/03 | NC | NC |
| 122. | Wieprecht, Karen Ann | DC, USDC 1:01CV00889 | 04/24/01 | MO | MO |
| 123. | Woolfolk, Kelly Ann | DC, Superior CA No. 03-0001177 | 02/19/03 | WA | WA |
| 124. | York, Stacey | DC, USDC 1:01CV01062 | 05/15/01 | MN | CA |